appearing on behalf of Appellant Artak Moskovyan. I'd like to reserve two minutes of my time for rebuttal. Just watch the clock as it counts down. Thank you. This Court should reverse the District Court's denial of Mr. Moskovyan's suppression motion because from the impoundment to the inventory search to the warrant for the house that followed, the seizure and searches here violated the First Amendment. To start with the impoundment, the government here didn't show, didn't meet its heavy burden to show a valid caretaking purpose for the impoundment from the restaurant parking lot. Case law has limited those caretaking purposes to two main areas. The first being to remove cars that pose a hazard to public safety and that's a rationale that wasn't argued and isn't an issue here. The second is to remove cars that are at risk of vandalism or theft. And the District Court here concluded that the officers reasonably concluded that there was a risk of vandalism, didn't say theft, because the car was near a busy intersection. And on this record, the only information that the government has put in is that the car was near a busy intersection. If the car had been parked overnight, could Del Taco have had it towed away? I believe so. Okay. Is that a valid concern to the officers, that they just leave a car that's going to get towed by somebody else? I don't believe if it's, it depends, it still has to fall within public safety hazard or vandalism or theft. If by the virtue of the fact of being parked overnight, and this was at 5.30 or 6 p.m., the officers had concluded, yes, at this location it would be vulnerable to vandalism or theft, that could conceivably be a benefit. But it wouldn't be sufficient if the officers thought because it was parked on private property and there were warning signs that if they left it there that the car could just get towed. At ER 276, one of the rationales the officer himself articulated is not enough. It's true that often illegal parking is a proxy for a public safety hazard. For instance, if it's in a red zone and blocking an exit or it's in front of a fire hydrant or in an emergency lane. But the fact of, none of those are argued here, but the illegal parking has to be connected to vandalism, theft, or public safety. And I think just the mere potential that it could be towed itself does not qualify. Again, if it had been, at some point a car is left overnight or for days, because it then might be a target for vandalism or theft, and if the officer articulates that and says, you know, in my experience, cars that are abandoned become targets, that... Counsel, would your, this was an inventory search determination by the trial court. If the court had made the same determination based on either the automobile exception or search incident to arrest, would that be a stronger or weaker case? Um, I believe the district court thought it expressly declined to rule on automobile exception. That's correct. Because it found it sort of shaky. The government... Sort of what? Sort of what? That it found that, and I believe it to be somewhat shaky, to go from the fact of possessing a single fraudulent access card outside a car, there must be a way of making the leap to saying there's more of that kind of contraband or further evidence connected to that contraband. And the way the government attempts to do this, and the officer in his declaration said his reasoning was that he had interrupted Mr. Moscovian in the act of selling the card to his friend, Mr. Petrosian. And again, on this record, I don't think there's enough to make that first leap. The only thing the district court found was that he dropped the card. And by dropped, he was very careful to say, not necessarily that he purposefully dropped the card, but that it was in his hand and fell after he saw the police officers. If you recall, the police officers couldn't see the middle of his body. They could see his head and his feet, and it was already dark. There was no indication of a hand-to-hand exchange or money changing hands or any testimony, statements that would indicate that they were there for the purpose of a sale. And that's the rationale they have given. The second is that Mr. Moscovian's link to this car is more attenuated than in the other vehicle search automobile exception type cases. It is true that he had the keys in his pocket, but he said, you know, and it wasn't disputed. The officer knew that that wasn't his car. And I think crucially, the officers had just pulled into the parking lot. Mr. Moscovian and Mr. Petrosian were outside the car. They had not seen them drive up in the car. They don't know if they had arrived together in any way, how long they had been there. So it's not like these cases, the government relies on where the defendant is seen backing up a car to a garage that's known to contain contraband, is driving to some abandoned airstrip in the middle of the night, and is firmly put in connection with that car. So for that reason, I think the automobile exception would not save this search. Could you address the warrant, where it has the wrong date, and why the good faith exception wouldn't excuse that error? I mean, the warrant, we'd argued, is deficient on many counts. One of them is the stale date. And this Court's cases, such as Hove and Luong, show that even if something is, a piece of information is in the mind of the officer doing the search, for example, in Hove, that the searching officer knew that the address, it was the defendant's father's address, was indeed the father's address. That connection wasn't made within the four corners of the affidavit. And this Court said that it's an objective test and not a subjective test. So the fact that the officers may have known that this search had just occurred hours before can't be relied on. Also, it goes to, I think, the very bare-bones nature of this warrant, affidavit. If you look at it on page 83, it basically says, one, Mr. Moscovian was found in a parking lot with some access cards that had handwritten notations on them, and he had dropped one of them. Two, he lives here. Three, in my opinion, there is probable cause. And the officer who swore out the affidavit was not one of the officers on the scene. It's this Jay Albrecht. We don't know anything about their training and experience on that warrant. And again, the government, in its briefing, attempts to bridge that gap by saying, well, clearly computers must have been used to encode these kind of cards that were found and that are connected to that possession offense. And it's a mere possession offense that the affidavit believes there's probable cause to charge him with. Counsel, you're down to two minutes. You indicated you want to reserve. Yes, Your Honor. Thank you. Very well. We'll hear from the United States. Good morning, Your Honors. Vanessa Bair-Jones on behalf of the United States. May it please the Court. Your Honors, the facts here, an illegally parked car, an unavailable owner, and a vehicle that was at risk of vandalism or theft if left overnight in an unfenced private parking lot, put this case squarely within this Court's precedent upholding impoundments under the community caretaking exception. Now, defendant continues to argue that there is not sufficient evidence of a community caretaking function or purpose here. That's relied by the record. It's undisputed that the car was illegally parked on the Del Taco parking lot. There's evidence in Officer Darby's declaration that he saw the sign above the Lexus saying it was for private patrons only and that there was no indication that the defendant or his companion, Archer Petrosian, had frequented Del Taco. And the district court did not err in concluding that that car was illegally parked. Now, this Court has held in What's the evidence on risk of vandalism? I didn't see much about that. Yes, Your Honor. There was a photograph before the district court at ER 292 that shows the white Lexus, which is a luxury car, exposed on a nearly empty, if not empty, lot with undefensed on a commercial street corner, which the district court noted that this was a busy commercial intersection. Glen Oaks Boulevard is six lanes wide with a divider. Across the street is a gas station. Across the other side is a strip mall. This is not like this case, this Court's case in Cervantes, where it's a residential street and the car is legally parked. And, in fact, in Cervantes, the Court talked about the differences between a car that's on a private parking lot or a public parking lot, like in Holstrom, where there's this more inherent risk that a car that's abandoned on a parking lot is going to be at risk for vandalism. And that makes sense. Here, if this car had been left there the only car on this parking lot, on a busy intersection, a luxury car, and it would have been at risk of vandalism or theft. How new was it? Sorry, Your Honor? How new was the Lexus? The Lexus was a 2009 Lexus, and this was in 2011, shortly into, so January of 2011, so it's probably a year or two old. Could you address the warrant? We're supposed to look at the face of the warrant, not interpolate. So the warrant clearly was a year out of date. Yes, Your Honor, and the District Court did not clearly err in finding that the magistrate could have recognized that this was a typo. And I would submit that this case is almost entirely analogous to the Fourth Circuit's case in the United States versus Gary, in which there was a typo of the year on the date of the search of a trash can in the affidavit and it was just a year off. And in that case, the Fourth Circuit found that the magistrate had not abandoned its role and was serving as merely a rubber stamp because there was a substantial basis for the magistrate to believe that the search had taken place in the correct year, since the date of the search was just the prior date that the affidavit was submitted. And here it's the exact same situation. The date of the search of the car was the same date that the officers submitted this warrant to the magistrate. It was reasonable for the magistrate to conclude that an affidavit that talks about a search of a vehicle and the arrest of suspects on January 6th was, in fact, talking about that same, that very same date, January 6th, 2011, even though there was a typo in there of 2010. And certainly this was, it was reasonable for the officers to rely on the search warrant in this case and the good faith exception would apply. I'd also like to, unless you have any further questions on that point, Your Honor, I'd like to briefly talk about the automobile exception. Defense counsel made a comment that the district court didn't reach that because the district court wasn't as comfortable with that, but there's nothing in the record suggesting that the district court didn't reach this for any purpose other than the district court had already found it lawful under one theory. In fact, there was. Therefore, did not reach it. Exactly, Your Honor. So what's your argument? I don't understand. I was just commenting that there's nothing in the record suggesting the district court made any findings that this was. I think counsel agreed to that. Okay. Thank you, Your Honor. She thought it was flaky. Yes, Your Honor. Not Judge Walton. Yes, Your Honor. And here there were ample facts in the record showing that there was probable cause to search the Lexus. And in fact, in ruling on the Franks issue, the district court found Officer Darby credible when Officer Darby testified about exactly what he saw that night as he was pulling into this Del Taco parking lot. He saw the defendant look up at the patrol car and then immediately look down at his hands. He saw something drop to the ground. In addition to the fact that there was this object which had dropped to the ground, which Officer Darby found out was this fraudulent card, the card had been folded, which Officer Darby noted from his experience is something that, you know, a defendant would do if they were trying to cause it so it wouldn't be red, the sort of magnetic stripe would not be red on the back. And in addition to that, defendant in her, in his reply, cites cases that deal with narcotics. And I would submit to the court that identity theft is different from narcotics offenses because somebody could possess a personal use amount of marijuana say. And that would make sense. That would be the crime that they were personally using marijuana. In the case of credit card fraud, possessing just one fraudulent credit card does not do much for somebody who's a fraudster. The whole purpose is to have multiple, many, a large quantity of these cards because frequently they're immediately deactivated after sort of one fraudulent use. And Officer Darby, who has 14 years of experience, has much experience surveilling financial crimes, talked about that in his affidavit, sorry, I apologize, in his declaration about how suspects will carry large quantities of these. So I would submit that there was substantial probable cause to search the vehicle and that that would be an alternative theory upon which this court could uphold the district court's findings. Unless there are further questions, I would submit. Thank you, counsel. Ms. Kim, you have some reserve time. Thank you. First of all, I'd like to point out that contrary to the government's argument, the district court never found that this was a residential neighborhood. If you look at ER 14 to 15 where he's talking about the caretaking purpose. And indeed that description of the neighborhood first appears in the government's briefing on appeal. There is nothing in the record about a six-lane highway. If you The district court never found that it was residential? The district court never found that it was commercial? He never found either. Obviously the Del Taco parking lot itself is a commercial establishment, but it's rather blurry in the excerpts, but at 292, immediately behind that parking lot is a row of townhouses or condos or apartments. And while it doesn't exactly correspond to the sort of wide residential streets of Cervantes, which appear to be more of a suburban type neighborhood, it is, you know, you can see residences in the actual photo of the parking lot. But the street in front of Del Taco is a very busy street, is that correct? Six lanes. There is no evidence in the record about how busy it was. Can we go to Google and figure that out for ourselves? If you go to Google, I submit you will see it in a residential neighborhood, but the government asserted in its briefing. This restaurant was in a residential neighborhood, is that what you're saying? It's a dense urban neighborhood, but it is not a commercial strip or that would be deserted at night. And the district court made no findings to the fact that it was commercial, the neighborhood, or residential. Or, in fact, how it being a busy neighborhood or not busy neighborhood would affect the vandalism concern. Well, if it's illegally parked and you don't dispute that, why isn't that in and of itself or not? It could be towed and they were denying ownership, so why wouldn't they take it into custody? Because it is, the fact that it is illegally parked does not by itself implicate, in this case, public safety or vandalism or theft. If it's illegally parked because... Were there other cars in the parking lot? From the photo, it appears to be fairly empty. I tell you, I wouldn't want my Lexus parked in a Del Taco parking lot overnight. I had my car broken into when I was in a residential area and I just parked it on the street and it was a bright daylight. Every car is conceivably at some risk of vandalism or theft in any neighborhood, but I think the caretaking purpose goes to the officer's safety. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision and we will hear argument in the last case of the docket today, which is United States v. Burgos.
judges: O'scannlain, Fisher, Bybee